# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**UNDRANECKIO BRASSFIELD**                                      **PLAINTIFF**

**VS.**                                      **CIVIL ACTION NO. 3:17CV72-HTW-LRA**

**JOSEPHINE BOYD AND**
**MICHELLE JACKSON**                                               **DEFENDANTS**

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned Magistrate Judge for a report and recommendation. Plaintiff Undraneckio Brassfield, *pro se*, and Attorney Tommy D. Goodwin, counsel for Defendants, appeared before the undersigned for a hearing conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The hearing was conducted in part to determine whether or not Plaintiff's claims were supported by a factual or legal basis.

The Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B), applies to prisoner proceedings *in forma pauperis* and provides that "...the court shall dismiss the case at any time if the court determines that . . .(B) the action or appeal -- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." Since Plaintiff was granted *in forma pauperis* status, Section 1915(e)(2)(B) applies to his case.

Plaintiff was a convicted felon in the custody of the Mississippi Department of Corrections [MDOC] and housed in the Central Mississippi Correctional Facility [CMCF] in Pearl, Mississippi, when the events he complains about occurred in October 2016. In his Complaint filed pursuant to 42 U.S.C. §1983, Plaintiff described the underlying facts as: "I was abruptly relocated from Unit 720, where I was 'B' custody, to R&C lockdown, to C-custody with no provocation." [1, p. 5]. He charged that this was done by Defendants Josephine Boyd and Michelle Jackson, two staff members, and that there were no witnesses. In his Complaint, under the "Injuries" section, Plaintiff wrote "no injuries sustained." [1, p. 6]. He requested monetary damages, "unless my custody could be reinstated from closed c-custody to B custody." *Id.*

Plaintiff gave sworn testimony describing and augmenting the claims set forth in his Complaint. He testified that he was housed in general population at CMCF and then was abruptly moved to close custody segregation on October 10, 2016. He later learned that his custody level had dropped because of a rule infraction: he received a rules violation report [RVR] because he was in possession of a cellphone and a homemade knife. Plaintiff testified that he does not dispute that he was guilty of the RVR, nor does he dispute his punishment. He simply disputes the fact that protocol was not followed, in that he was not given the opportunity to attend his classification hearing. He did not find out that his classification hearing had been conducted without him being there until after he was

2

moved.   Plaintiff charges that the prison did not follow its own policy and did not "go by protocol."

Defendants Boyd and Jackson signed the paperwork that changed his classification, and that is why he named them as Defendants.   Defendant Boyd was a case manager and Defendant Jackson may be a supervisor, according to Plaintiff.

Plaintiff testified that he remained in segregation and C-custody from October 2016 until June 2017, approximately eight months.   His B custody was restored at that time and he was again placed in general population.   Plaintiff conceded at the hearing that he had received what he asked for as relief, custody restoration.   But, he also "asked for punitive and emotional --- and emotional damages and monetary damages."

Plaintiff described the conditions of his confinement in segregation.   He was locked down in his cell for 23 hours per day and sometimes 24.   His visitation privileges were lowered; he could not attend classes or work; he lost mobility around the prison when not allowed out of his cell.   According to Plaintiff, he could not always get the medical attention he needed.   And, he missed a family funeral that he may have been allowed to attend in B custody.

The undersigned has considered the pleadings and the hearing testimony and finds that Plaintiff's claims against Defendants Boyd and Jackson are frivolous under the law pursuant to 28 U.S.C. § 1915(e)(2)(B) and must be dismissed on the merits of the claims.

To invoke the protections of the Due Process Clause, Plaintiff must have a protected liberty interest at stake. A constitutionally protected liberty interest is "limited to freedom from restraint which ... imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Eight months in segregation and a custody change are not atypical as punishment for possession of a cellphone and knife. Indeed, long-term segregation is not considered an "atypical and significant" hardship of prison life. *Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir. 1996) (finding that administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest). Generally, changes in custody status or confinement in segregation do not implicate a liberty interest. *See Nathan v. Hancock*, 477 Fed.Appx. 197, 198-99 (5th Cir. 2012; *Luken v. Scott*, 71 F. 3d 192, 193 (1995) (loss of opportunity to earn good time credits does not trigger Due Process protection); *Malchi v. Thaler*, 211 F.3d 953-958-59 (5th Cir. 2000) (change in custody status does not implicate a liberty interest because effect of classification on a prisoner's ultimate release date is too speculative). After his RVR, Plaintiff was placed in administrative segregation for eight months and his custody status was changed to C custody for that period of time. As the Court in *Pichardo* stated, "absent extraordinary circumstances, administrative segregation as such, being incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim." *Id.* Plaintiff does not contend that his conditions of confinement were severe—he simply lost his privileges and the

4

ability to move around his unit in general population rather than be confined to his cell 23 hours a day.

Extraordinary circumstances were found by the Supreme Court in *Wilkinson v. Austin*, 545 U.S. 209 (2005), when it held that the use of solitary confinement in Ohio's Supermax facility did impose "atypical and significant hardship." The Fifth Circuit also found that solitary confinement for 39 years under restrictive conditions in Angola was atypical and imposed significant hardships. *Wilkerson v. Goodwin,* 774 F.3d 845, 854 (5th Cir. 2014). Plaintiff's punishment did not approach the severity of the confinement described in these cases.

Plaintiff has not alleged any specific circumstances which would make his conditions sufficiently severe to give rise to a liberty interest under *Sandin*. The Court has utilized the directives set forth in *Wilkerson* and *Wilkinson* and finds that no extraordinary circumstances render Plaintiff's confinement an "atypical and significant hardship" on him in relation to the "ordinary incidents of prison life." "Two and a half years of segregation is a threshold of sorts for atypicality," and Plaintiff's eight months in restrictive housing does not meet the threshold. *Wilkerson*, 774 F.3d at 855. *Sandin* applies and due process rights did not attach; no constitutional claim has been stated.

Even if Plaintiff did have such a right, Due Process's fundamental requirement is that the prisoner be granted the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976) (quoting

5

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). He alleges that he was not allowed to attend his classification hearing. However, he was able to file an ARP and go through those procedures in challenging the change in custody. Brassfield clearly testified that he was guilty of the RVR and that he does not even dispute his punishment: he merely believes that protocol should have been followed. This allegation does not rise to the level of a constitutional violation, however, as "a prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process." *Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

Defendants may have been negligent in not allowing Plaintiff to attend his classification hearing; yet, a negligent act does not violate the Constitution. 42 U.S.C. §1983 has never been interpreted to provide that simple negligence on the part of a prison official is a basis for a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 414 U.S. 344 (1986).

The United States Supreme Court has held that "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if 'there was some evidence from which the conclusion of the administrative tribunal could be deduced ....'" *Superintendent, Mass. Correctional Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985) (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106 (1927)). The evidence in this case is supportive of the finding of guilt for possession of a cellphone and knife, as

6

Plaintiff concedes his guilt and does not even challenge his punishment.  Because of this admission, fundamental fairness does not require this Court to set aside decisions of prison administrators that "have some basis in fact."  *Superintendent,* 472 U.S. at 456.  The courts cannot retry every prison disciplinary dispute; rather, the court may act only where arbitrary or capricious action is shown.  *Reeves v. Pettcox,* 19 F.3d 1060, 1062 (5th Cir. 1994).  Prison disciplinary decisions will be overturned only where there is no evidence whatsoever to support the prison official's decision.  *Id.*  The federal courts cannot act as a reviewing board for prison disciplinary actions.

The record in Plaintiff's case confirms that there was evidence to support his RVR conviction, and minimum due process requirements were satisfied.  In the undersigned's opinion, no constitutional violation has been stated against these Defendants.

An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).  Under the circumstances of this case, wherein Plaintiff concedes his guilt regarding the RVR, does not challenge his punishment, and can show no actual injury, no constitutional claim may be established.

Having liberally construed the Complaint in favor of Plaintiff, and for the reasons set forth herein, the undersigned recommends that Plaintiff's claims be dismissed as frivolous and for failure to state a claim on which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)(i)(ii).  Final Judgment in favor of Defendants should be entered.

7

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. 28 U.S.C. § 636; FED. R. CIV. P. 72(B); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 30th day of April 2019.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE